## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JESUS GERMAN,** ***and on behalf of***
***himself and all others similarly situated***,

    **Plaintiffs,**

                             **CASE NO.:**

**v.**

**HOMEDELIVERYLINK, INC.**

    **Defendant.**

_____/

## CLASS ACTION COMPLAINT

Plaintiff, JESUS GERMAN, ("Named Plaintiff" or "Plaintiff German") on behalf of himself and all others similarly situated (the "Class")(Named Plaintiff and the Class are sometimes collectively referred to herein as "Plaintiffs"), by and through undersigned counsel, brings this action against Defendant, HOMEDELIVERYLINK, INC., and in support of his claims states as follows:

## NATURE OF THE LAWSUIT

1.    This is a complaint for damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and for violations of the Florida Constitution, Article X, Section 24, the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110, the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., and for conversion under Florida common law.

2.     This Complaint challenges HDL's uniform policy of willfully misclassifying its Florida Delivery Drivers as independent contractors, when they are, under the economic reality test, employees of Defendant.

3.     By unlawfully misclassifying its Florida Delivery Drivers as independent contractors, HDL creates a scheme in which it faces the public and effectively acts as a singular enterprise comprised of its Florida Delivery Driver employees, yet passes its ordinary costs of doing business on to those employees it unlawfully categorizes as independent contractors in order to gain an unfair method of competition and trade through unconscionable acts or practices by:

(a) Failing to pay its Florida Delivery Drivers minimum wage and overtime premium required by Federal law as compensation for every hour that they worked;

(b) Creating negative tax implications for its Florida Delivery Drivers depriving them of their right to seek benefits under the Florida Worker's compensation program and the Florida Reemployment Assistance program, and effectively reducing their long-term contributions to the federal Medicare and Social Security programs;

(c) Being unjustly enriched not only by the unpaid labor of the Florida Delivery Drivers but also as to Defendant's diversion of losses and the costs of doing business onto those Florida Delivery Drivers it unlawfully categorizes as independent contractors.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 201 et seq. Exercise of supplemental jurisdiction over Plaintiffs' state law claims are appropriate under 28 U.S.C. § 1367(c).

5.    This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

6.    This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiffs' FLSA claims are the same acts and omissions that give rise to Plaintiffs' Florida Minimum Wage Claims.

7.    At all times material hereto, Defendant was subject to personal jurisdiction in the State of Florida under the Florida Long Arm Jurisdiction Act, Fla. Stat. § 48.193. Defendant is subject to personal jurisdiction in Florida, because it caused injury in the State of Florida through its acts and omissions outside of the State of Florida.

8.    Furthermore, this Court's exercise of personal jurisdiction over Defendant is constitutionally sound. Through its operations in Brandon, Florida, in Hillsborough County, Defendant has established sufficient minimum contacts with the State of Florida to make it reasonably foreseeable that Defendant could be sued in Florida. Defendant will suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

9.    Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Hillsborough County, Florida.

10.    Plaintiffs have satisfied all conditions precedent, or they have been waived.

11.    Plaintiffs have hired the undersigned attorneys and agreed to pay them a fee.

12.    Plaintiffs request a jury trial for all issues so triable.

## PARTIES

13.    Defendant operates a freight transportation company operating in Brandon, Florida, in Hillsborough County.

14.    Defendant is a foreign corporation with headquarters in San Juan Capistrano, California.

15.    Defendant hired Plaintiff German to work as a Delivery Drivers at the facility in Brandon, Florida.

## MISCLASSIFICATION AS INDEPENDENT CONTRACTORS

16.    Defendant purportedly contracts with independent contractors in Florida to act as its Delivery Drivers in order to transport retail merchandise, in this case furniture from Ashley Furniture, to residential homes.

17.    However, Defendant exercises employee-level of control over its Delivery Drivers' actions and responsibilities, all the while improperly classifying them as independent contractors in order to divert its own costs of doing business on to them.

18.    Defendant creates the corporation status for its Delivery Drivers and completes any required forms for the Florida's Division of Corporations for the Delivery Driver to establish an allegedly independent corporation.

19.    Defendant drafts, and requires the Delivery Drivers to sign, its uniform independent contractor agreement unchanged and with the rates of service established solely by Defendant.

20.    Defendant's uniform independent contractor agreement requires the Delivery Driver to exclusively perform transportation services for Defendant and can only provide services to another entity if Defendant does not have work for the Delivery Driver, which is rarely the case. Failure to provide exclusive services to Defendant whenever it needs services constitutes a breach by the Delivery Driver of Defendant's uniform independent contractor agreement.

21.    Defendant's uniform independent contractor agreement requires Delivery Drivers to permit Defendant to sell to them, at Defendant's sole discretion, and then deduct from their pay, all "cost of operating, repairing and maintaining the equipment," and "fines, empty mileage, tolls," as well as petty cash advances, equipment rental and fuel costs, insurance, workers compensation premiums and deductions, liens, costs of professional attire, waste disposal, shrink wrap disposal, and other costs of doing business that Defendant seeks to pass on.

22.     Defendant requires the Delivery Drivers to utilize its account with a rental company, here Enterprise, in order for the Delivery Drivers to lease vehicles to perform work for Defendant.

23.     However, Defendant treats the vehicles leased to the Delivery Drivers as their own by requiring the trucks to be stored at its warehouse, and, most importantly, by helping themselves to trucks leased to other Delivery Drivers if there are not enough trucks to run the day's routes. Defendant would staff those trucks on its own and send them out.

24.     Defendant requires the Delivery Drivers to utilize its insurance broker to obtain insurance to lease vehicles and transport the furniture for Defendant.

25.     The insurance Defendant requires the Delivery Drivers to utilize does not transfer to any other company the Delivery Drivers may wish to perform services for thus prohibiting the Delivery Drivers from expanding their business and earning income from entities other than Defendant.

26.     Defendant requires the Delivery Drivers to place its own signs and placards on all the leased vehicles and to wear Defendant's uniforms.

27.     Defendant requires the Delivery Drivers to attend mandatory meetings in the mornings. Defendant utilizes the mandatory meetings to instruct the Delivery Drivers and their alleged employees on how to perform their job including, for example, how to wrap furniture for loading, how to interact with

the residential customers, and how to wear the uniforms issued to them by Defendant.

28.    Defendant also rewards high performing Delivery Drivers with gift cards at the morning meetings.

29.    Defendant monitors Delivery Drivers, including low performing Delivery Drivers, by following their vehicles throughout the day.

30.    Defendant requires the Delivery Drivers to check in with Defendant each morning and check out at the end of each workday.

31.    Defendant requires the Delivery Drivers to wait in Defendant's warehouse if routes were not ready or if the furniture was damaged, unassembled, or not pulled from storage.

32.    Defendant requires the Delivery Drivers to accept the routes it provides to them, including the order in which the deliveries are to be made and the timeframes for the deliveries to the residential customers.

33.    The Delivery Drivers do not have control over the order of the deliveries, the timeframes for the deliveries, or the number of deliveries to make each day.

34.    The Delivery Drivers do not negotiate with the residential customers or the retail merchandiser, in this case Ashley Furniture, as to the rate charged for the delivery, as it is dictated by Defendant.

35.     Defendant requires the Delivery Drivers to call Defendant at every stop regardless of whether or not the delivery experienced any irregularities or issues.

36.     Defendant requires the Delivery Drivers to stay at a residential customer's home until Defendant's dispatch is contacted and approves the departure.

37.     Defendant requires the Delivery Drivers to check in at the end of the day and wait in the warehouse to unload undelivered or damaged furniture which is often delayed by the understaffing at the warehouse.

38.     Defendant requires the Delivery Drivers to respond at all hours to its needs for loading the freight from its warehouse as it dictates, including mandatory night loads.

39.     Defendant requires all applications of any person willing to work for the Delivery Drivers as helpers and drivers to go through Defendant so that Defendant makes the hiring decision. The Delivery Drivers are not permitted to provide any applications to any employees willing to work with them.

40.     Defendant created and requires all of the Delivery Driver's alleged employees to go through its certification process.

41.     Defendant requires all of the Delivery Driver's alleged employees to take the drug screens provided by Defendant.

42.     Defendant requires its Delivery Drivers to permit it sole discretion to terminate the Delivery Driver's alleged employees.

43.    Defendant effectively prohibits its Delivery Drivers from accepting any work from any other entity and thus controls their profit and loss by requiring exclusivity in its contracts at its whim, ensuring the insurance purchased through Defendant's connections is non-transferable to services to any other entity, and maintaining all of the leased vehicles used by the Delivery Drivers are stored in its lots and facilities.

44.    Defendant dictated what insurance was required and deducted from any amounts owed to its Delivery Drivers, the premiums for insurance of the leased vehicles as well as workers compensation insurance premiums.

## FLSA COVERAGE

45.    In an FLSA case, the following elements must be met. "(1) [Plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [Plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

46.    At all times material hereto, Plaintiff German was "engaged in the production of goods" for commerce within the meaning of Section 6 and 7 of the FLSA, and was thus subject to the individual coverage of the FLSA.

47.    As part of his regular job duties for Defendant, Plaintiff German routinely and regularly used and/or handled items moving in the stream of commerce.  For example, Plaintiff German transported furniture for Defendant within the state of Florida.

48.    At all times material hereto, Plaintiff German was an "employee" of Defendant within the meaning of the FLSA.

49.    At all times material hereto, Defendant was an "employer" within the meaning of the FLSA.

50.    Defendant continues to be an "employer" within the meaning of the FLSA.

51.    At all times material hereto, Defendant was, and continues to be, an enterprise engaged in the "providing services for commerce" within the meaning of the FLSA.

52.    At all times material hereto, the annual gross sales volume of Defendant exceeded $500,000 per year. Thus, Defendant was an enterprise covered by the FLSA under 29 U.S.C. §§ 203(r) and 203(s).

53.    At all times material hereto, the work performed by Plaintiff German was integral and essential to the business performed by Defendant.

**<u>FDUTPA</u>**

54.    Plaintiffs are "consumers" and are protected by FDUTPA.

55.    Defendant creates corporations in the names of its Delivery Drivers such as Plaintiffs so that it can pass the cost of doing business on to them.

56.    Defendant completes all the necessary paperwork so that a Department of Transportation assigned number is issued to the corporation Defendant created in the name of the Delivery Driver.

57.    Defendant requires the Delivery Drivers to sign unconscionable independent contractor agreements that require, for instance, the Delivery Drivers to:

a.  allow Defendant unfettered ability to "sell" to Plaintiffs and the Delivery Drivers anything Defendant believes they might need including "insurance premiums for works compensation insurance," the "cost of operating, repairing and maintaining the equipment" as well as "fines, empty mileage, tolls, etc." and to off-set payments to Plaintiffs for selling those items to Plaintiffs;

b.  allow Defendant to charge Plaintiffs for the costs of invoices, dispatch, and "other services" at Defendant's discretion;

c.  waive any right to salvage any cargo subject to loss, damage, delay or to use the cargo to mitigate even though the Delivery Drivers are charged for those losses and damage;

d.  agree to refrain from all collection efforts for nonpayment from Defendant's merchandiser client;

e.  release Defendant and its merchandiser client from any liens on cargo and to refrain from placing any liens on cargo; and

f.  notice Defendant of any lawsuit, prevent settlement of any lawsuit without Defendant's express permission, and to indemnify Defendant.

58.    As an employer, Defendant had a legal obligation under the Internal Revenue Code and Florida law to deduct all applicable employment taxes from its Delivery Drivers' earnings.

59.    At all times material hereto, Plaintiffs were "persons" within the meaning of FDUTPA, Fla. Stat. § 511.211(2).

60.    At all times material hereto, Defendant was engaged in trade or commerce, and as such, was governed by FDUTPA.

61.    The unlawful misclassification of Plaintiffs as independent contractors causes harm by creating negative tax implications, deprives them of the right to seek benefits through Florida Worker's Compensation program and Florida's Reemployment Assistance program, and effectively reduces their long-term contributions to federal Medicare and Social Security programs, when they are entitled to all of these benefits as a matter of law by virtue of their status as employees.

62.    By misclassifying Plaintiffs as independent contractors, Defendant avoided withholding employment taxes from their earnings. Defendant also avoided paying mandatory employment taxes on their behalf, as it was legally required to do for all of its employees under the provisions of the Internal Revenue Code. See 26 U.S.C. §§ 3102(a), 3402(a) (imposing a duty on employers to deduct applicable taxes from their employees' wages); 26 U.S.C. § 3401(d)(1) (defining "employer" under the IRC); (26 U.S.C. § 3121(a) (defining employee wages for the purpose of income taxation).

12

63. Defendant's purpose in misclassifying Plaintiffs as independent contractors, rather than properly classifying them as employees, is to save money and simultaneously acquire a competitive advantage in the marketplace. Specifically, by avoiding payment of all applicable employment taxes that it had a legal duty to pay on behalf of its Delivery Drivers by virtue of their status as employees, Defendant saved the money that it would otherwise have spent in meeting its tax obligations in connection with their employment. Moreover, this intentional misclassification of employees as independent contractors helped Defendant acquire a competitive advantage in the marketplace.

64. In purposely avoiding payment of the mandatory employment taxes that it was legally obligated to pay on behalf of its Delivery Drivers in order to save money for its business, Defendant simultaneously ensured that its labor costs remained consistently lower than those of other employers in Florida, by failing to pay the prevailing minimum wage and any applicable overtime, all the while depriving Plaintiffs of benefits to which, as employees, they were entitled by law.

65. Thus, by intentionally misclassifying Plaintiff German and the putative FDUTPA class members, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce, thereby violating the FDUTPA.

## **SPECIFIC FACTS**

66.    Plaintiff German worked for Defendant from March 2016 to December 2023 as a Delivery Driver.

67.    Plaintiffs' job-duties were to transport freights of furniture in the State of Florida.

68.    Defendant exercised employee-level of control over Plaintiffs' procedures, actions and responsibilities, all the while improperly classifying them as independent contractors.

69.    Defendant completed paperwork for Plaintiff German to create a corporation through Florida's Division of Corporations in or about March 2016.

70.    Defendant completed paperwork for Plaintiff German to have a Department of Transportation number issued to him.

71.    Defendant did not provide Plaintiff German with a copy of the alleged independent contractor agreement for a few weeks.

72.    Defendant required Plaintiff German to utilize its account with a rental company, Enterprise, in order for Plaintiff German to lease vehicles through Enterprise to perform work for Defendant and utilized the address of Defendant's warehouse for the rental.

73.    Without Plaintiff German's knowledge, Defendant also rented vehicles in Plaintiff German's name from Enterprise for its own use and then required Plaintiff German to pay for the rentals and insurance.

74.     Defendant required Plaintiff German to utilize its insurance broker, VanLiner, to obtain insurance to lease vehicles and transport the furniture for Defendant.

75.     Defendant required Plaintiff German to wear Defendant's uniforms including Defendant's issued gloves both when in the warehouse and when delivering the furniture to residential customers.

76.     Defendant required Plaintiffs to attend as many as three meetings per week as a morning "stand-up" meeting and dictated what time Plaintiffs and the Delivery Drivers had to arrive for work.

77.     Defendant also required Plaintiffs and all other Delivery Drivers to attend mandatory meetings with Defendant's management and the client's, Ashley Furniture's, management.

78.     Defendant required Plaintiff German to accept night loads.

79.     Defendant required Plaintiff German and the Delivery Drivers to wait at the warehouse in the morning even if the routes were not ready to be distributed or if the furniture was not ready to be loaded such that Defendant engaged Plaintiffs to wait.

80.     Defendant forced Plaintiff German to accept damaged or inadequate furniture that he would later be charged for as a "claim."

81.     Defendant also required Plaintiffs to wait at the warehouse at the end of the day, often for hours, to unload undelivered or damaged furniture such that Defendant engaged Plaintiffs to wait again.

82.     Defendant informed Plaintiffs and the other Delivery Drivers that Defendant would contact them throughout the day for status of deliveries and deliveries that were not made on time would result in monetary penalties even if the delay was caused by uncontrollable delays by Ashley Furniture in the warehouse.

83.     If a delivery was late, Plaintiffs were required by Defendant to pay for route assistance that was deducted from his pay.

84.     Defendant provided Plaintiffs with its mandatory 'driver' and 'helper' packets that were in reality employment applications to work for Defendant.

85.     Defendant required all applications of any driver willing to work for Plaintiffs, as an alleged independent contractor, to go through Defendant so that Defendant made the hiring decision.

86.     Defendant effectively prohibited Plaintiffs from accepting any work from any other entity and thus controlled Plaintiffs' profit and loss by requiring exclusivity of Plaintiffs' services for all of Defendant's demands and requiring insurance through its account with VanLiner that did not transfer to any other work even if Plaintiffs could set it up.

87.     Thus, Plaintiffs are "non-exempt employee" covered by the FLSA.

88.     At all times material hereto, Plaintiffs worked hours at the direction of Defendant, and Plaintiffs were not paid at least the applicable FLSA minimum wage for all of the hours that he worked.

89.    At all times material hereto, Plaintiffs worked hours at the direction of Defendant, and Plaintiffs were not paid at least the applicable State of Florida minimum wage for all of the hours that he worked, in accordance with the Florida State Constitution and the FMWA.

90.    By paying Plaintiffs a small percentage of the items delivered and, additionally, deducting from Plaintiffs' pay for improper reasons, Defendant failed to pay Plaintiffs a minimum wage.

91.    Defendant deducted from Plaintiffs' pay for allegedly damaged furniture without proof of damages or a mechanism to challenge such deductions. Even though Plaintiffs would pay for the amount of the furniture, the allegedly damaged furniture would be withheld from him and was, instead, returned to Ashley Furniture presumably for resale or loss.

92.    Defendant deducted from Plaintiffs' pay alleged damage to customer's homes without proof of damage or a mechanism to challenge such deductions.

93.    Defendant deducted from Plaintiffs' pay alleged damage to the leased vehicles from Enterprise due to paperwork being lost by Defendant and without any mechanism to challenge such deductions. Importantly, Enterprise did not communicate the alleged damages to Plaintiffs but instead to Defendant who would provide bills with blacked out totals for the deductions.

94.    Defendant charges Plaintiffs for multiple fees for which no explanation of the fees is given. Defendant has withheld at least $2,500.00 per

truck from Plaintiffs as part of an alleged performance bond and at least $2,500.00 per truck from Plaintiffs as part of an alleged rental bond.

95.    Defendant failed to track the Plaintiffs' hours of work and Plaintiffs regularly worked fourteen-hour days including the time he spent in morning "stand up" meetings, waiting for routes in the morning and waiting to unload at the end of the day.

96.    Defendant's actions were willful, and showed reckless disregard for the provisions of the FLSA.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

97.    Plaintiff German asserts his claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of all other similarly situated employees currently and formerly employed by Defendant.

98.    Pending any modifications necessitated by discovery, the Named Plaintiff preliminarily defines the class as follows:

**FLSA 216(b) Class:**

**All current and former Delivery Drivers of Defendant in the State of Florida, whether or not categorized as employees, trainees, or independent contractors, who were not compensated at least the statutory minimum wage in each week worked.**

99.    All potential 216(b) Class members are similarly situated because, among other things, they are or were all *de facto* employees of Defendant and, upon information and belief, all suffered from the same policies of Defendant, including:

18

a.    Being paid by the job without regard to the number of hours worked;

b.    Being improperly classified as "independent contractors"

c.    Failure to be paid at least statutory minimum wage for each hour of work as mandated by the FLSA.

### COUNT I – FLSA MINIMUM WAGE VIOLATION

100.    Plaintiffs reallege and readopt the allegations in paragraphs 1-53 and 66-99 of this Complaint as though fully set forth herein.

101.    During the statutory period, Named Plaintiff and Class Members worked for Defendant, and they were not paid the applicable statutory minimum wage for the hours that they worked, as mandated by the FLSA.

102.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

103.    As a result of the foregoing, Named Plaintiff and the Class Members have suffered damages.

### COUNT II – FLORIDA MINIMUM WAGE ACT VIOLATION

104.    Plaintiffs reallege and readopts the allegations in paragraphs 1-53 and 66-99 of this Complaint, as though fully set forth herein.

105.    Named Plaintiff exhausted all administrative and pre-suit requirements under Fla. Stat. § 448.110. During the statutory period, Defendant did not pay Plaintiffs the applicable Florida statutory minimum wage, as Defendant was required to do under Section 24, Article X of the Florida Constitution and the FMWA.

106.   As a result of the foregoing, Plaintiffs suffered damages.

**WHEREFORE**, for Counts I and II, Plaintiffs demand:

a.   All unpaid wages at the FLSA mandated minimum wage rate;

b.   All unpaid wage at the Florida mandated minimum wage rate;

c.   An equal amount of all owed wages and misappropriated funds as liquidated damages as allowed under the FLSA;

d.   An equal amount of all owed wages as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

e.   Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

f.   Such other relief to which Plaintiffs may be entitled, at law or in equity.

## <u>COUNT III – VIOLATIONS OF FDUTPA</u>

107.   Plaintiffs reallege and readopt the allegations in paragraphs 1-44 and 54-96 of this Complaint, as though fully set forth herein.

108.   This is an action for damages plus attorney's fees and court costs under FDUTPA.

109.   Plaintiffs are "persons" within the meaning of FDUTPA, Fla. Stat. § 511.211(2).

110.   Home Delivery Link, Inc., is engaged in "trade or commerce" within the meaning of FDUTPA, and Named Plaintiff and the FDUPTA putative class members are "consumers" as defined by FDUPTA.

111.    In violation of FDUTPA, Home Delivery Link, Inc., engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce, and has thereby deprived Plaintiffs of fundamental rights and privileges guaranteed to all employees under Florida law.

112.    In an effort to avoid providing its Delivery Drivers with the minimum benefits and protections afforded employees under Florida law, Home Delivery Link, Inc., has willfully, uniformly, and unilaterally classified each and every one of its Delivery Drivers as independent contractors rather than employees, despite the fact that the factual circumstances of the relationship between Home Delivery Link, Inc., and its Delivery Drivers clearly demonstrate that they are in fact employees of the company.

113.    The actions of Defendant, in misclassifying Plaintiffs as independent contractors, are unfair and deceptive trade practices prohibited under Florida law.

114.    By and through Defendant's unfair, unlawful, and/or deceptive business practices as described herein, Plaintiffs have suffered injuries in fact in that Defendant has obtained valuable property, money and/or services from Plaintiffs and has deprived Plaintiffs of valuable rights and benefits guaranteed to them by law.

115.    All of the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent,

and/or unscrupulous, and thereby constitute unfair, unlawful and/or deceptive business practices in violation of FDUTPA.

116.    Plaintiffs are entitled to and do seek such relief as may be necessary to restore to them the money and property which Defendant has acquired, or of which Plaintiffs have been deprived, by means of the above-described unfair, unlawful and/or deceptive business practices.

117.    Plaintiffs are further entitled to, and hereby seek a declaration, that the business practices described above are unfair, unlawful and/or deceptive, and seek further injunctive relief to restrain Defendant from engaging in any of the above-described unfair, unlawful and/or deceptive business practices in the future.

118.    As a result of the unfair, unlawful and/or deceptive business practices described herein, Plaintiffs have suffered and will continue to suffer irreparable harm unless Defendant is restrained from continuing to engage in these unfair, unlawful and/or deceptive business practices.

**WHEREFORE**, as to Count III, Named Plaintiff and all similarly situated employees who join this class action demand, with respect to their class FDUTPA claims, the following:

a.  Judgment against Defendant and a determination by this Court that Defendant violated the FDUTPA;

b.  Actual damages suffered by Named Plaintiff as a result of Defendant's FDUTPA practices;

   c.  All costs and attorney's fees incurred in prosecuting these claims; and

   d.  For such further relief as this Court deems just and equitable.

**COUNT IV: CONVERSION**

119.   Named Plaintiff realleges and readopts the allegations in paragraphs 1-44 and 54-96 of this Complaint, as though fully set forth herein.

120.   Defendant charged Named Plaintiff for multiple fees for which no explanation of the fees is given. Defendant has withheld money from Named Plaintiff as part of an alleged performance or rental bond.

121.   Pursuant to its unconscionable independent contractor agreement, Defendant has withheld additional amounts for alleged damages or loss without providing Named Plaintiff a mechanism to challenge such deductions.

122.   Thus, Defendant has wrongfully appropriated monies owed to Named Plaintiff and its intentional failure to return the monies constitutes conversion under Florida common law.

123.   As a result of Defendant's conversion, Named Plaintiff was deprived of the possession, use, and enjoyment of his property, in the form of the bond monies and improper deductions from Named Plaintiff's pay.

**WHEREFORE** as to Count IV, Named Plaintiff demands, with respect to his conversion claim, the following:

   a.  A jury trial on all issues so triable;

   b.  That process issue, and that this Court take jurisdiction over the case;

c.  Actual damages suffered by Named Plaintiff as a result of Defendant's

conversion;

d.  All costs and attorney's fees incurred in prosecuting these claims; and

e.  For such further relief as this Court deems just and equitable.

### JURY TRIAL DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

Dated this 23rd day of February, 2024

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
Email: gdesane@wfclaw.com
**Attorneys for Plaintiffs**